Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2026 AUG 31 A 10: 12
CLERK Kom
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT

for the

11th District of Georgia

Southern Division

Gregory Davis
Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Mantay ATU 782, Et (Zenith America
Defendant(s)
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. ____________
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

**I. The Parties to This Complaint**

**A. The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Gregory Davis |
| Street Address | 4642 Ernestde |
| City and County | Forest Park |
| State and Zip Code | Georgia 30297 |
| Telephone Number | (4)398-9081 |
| E-mail Address | gdavis4642@gmail.com |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

FAA 458 Union Bill of Rights Section 4 Federal Arbitration Act
4/14 Amendments Flowery Act Statutory Laws
collective Bargain/clause (ADR)

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   The plaintiff, *(name)* Gregory Davis, is a citizen of the State of *(name)* Georgia.

   b. If the plaintiff is a corporation

   The plaintiff, *(name)* N/A, is incorporated under the laws of the State of *(name)* ______, and has its principal place of business in the State of *(name)* ______.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

   The defendant, *(name)* N/A, is a citizen of the State of *(name)* ______. Or is a citizen of *(foreign nation)* ______.

Defendant No. 1

| | |
|---|---|
| Name | Marta/ATU732, Et Zenith American |
| Job or Title *(if known)* | |
| Street Address | 2424 Piedmont RD NE |
| City and County | Atlanta Fulton |
| State and Zip Code | GA |
| Telephone Number | (4) 648-5000 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

b. If the defendant is a corporation

The defendant, *(name)* Manta/ATU 732, Etc, is incorporated under the laws of the State of *(name)* Georgia, and has its principal place of business in the State of *(name)* Georgia. Or is incorporated under the laws of *(foreign nation)* N/A, and has its principal place of business in *(name)* N/A.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

One point 3 million U.S. dollars $1,300,000.00

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Most on Complaint = (1) No medical insurance 6/1/2016-present
(2) No grievance Union President Trustee Pat Giles, Mr. Costa 6/1/2015-present
(3) Violation of Disability payouts 6/1/2015-present Same Indiv.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Most on Complain
(1) Collective Bargaining clause for ADR Mediation
Violations Interference FAA 458

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 8-31-26

Signature of Plaintiff [signature]

Printed Name of Plaintiff Gregory Davis

### B. For Attorneys

Date of signing: ______

Signature of Attorney ______

Printed Name of Attorney ______

Bar Number ______

Name of Law Firm ______

Street Address ______

State and Zip Code ______

Telephone Number ______

E-mail Address ______

In the United States District Court for the

11th circuit court Southern District

Brunswick,Georgia Division

Pro Se,Gregory Davis request jury trail.

Vs.

Marta/Marta-Atu local 732

Retirement committee (includes

Zenith American (marta's entirety)

COMPLAINT FOR A CIVIL CASE

HERE comes pro,se plaintiff Gregory Davis with facts and laws that apply to this case counts of fraud,perjury,new evidence and unusual case.

SHORT SUMMARY OF FACTS CONCERNING THIS CASE

1.marta/atu732 ,et zenith American are involved in a collective bargaining agreement In which they have not followed proper protocol and procedure which is govern by TAFT-HARVEY ACT these are regulatory law violations.

2.Multiemployer zenith American are also govern by TAFT-HARVEY ACT IS A REGULATORY LAW and they didn't apply universal formulation in pension monthly benefits.

3.Marta/atu732 e.t. didn't apply proper protocol and procedure in granting me a Grievance-arbitration in proper order as the collective bargaining agreement stated Since I was terminated in September of 2015.

4.I was nor entitled to temporary benefits I was qualified for according to summary Benefit retirement handbook I receive 5%ppi for mental injury from dr.Hill and 2% injury From Dr.Connelly during the injury in workmans comp case after my injury in 2014.

5.Dr.Connelly ,Dr.Hill and Dr Adams diagnose me with work related injury qualifying me For disability pension that pays much more monthly benefits than early retirement in Which they forced on me.

6.ON June 1 2016 I received a letter of seniority -termination from marta/atu732,et A decision to terminate me was made 8 months earlier on September 15-2015 the Accident was in Oct 12 2014 I was never contacted or informed my job was in jeopardy In no form or fashion letter,email.(telephone is not official according to the contract)this Is a violation of TAFT-HARVEY ACT I had no prior knowledge until may 26-2026.

7.According to DR.ADAMS I was to return to work February 15-2016.( I had know prior Knowledge until 1-15-2026.

8.*** marta and atu732 e.t are under a collective bargaining agreement ,however in that Agreement there a clause were adr mediation by law must be used in a labor dispute .

SHORT SUMMARY OF FACTS CONCERNING THIS CASE

1.marta/atu732 ,et zenith American are involved in a collective bargaining agreement In which they have not followed proper protocol and procedure which is govern by TAFT-HARVEY ACT these are regulatory law violations.

2.Multiemployer zenith American are also govern by TAFT-HARVEY ACT IS A REGULATORY LAW and they didn't apply universal formulation in pension monthly benefits.

3.Marta/atu732 e.t. didn't apply proper protocol and procedure in granting me a Grievance-arbitration in proper order as the collective bargaining agreement stated Since I was terminated in September of 2015.

4.I was nor entitled to temporary benefits I was qualified for according to summary Benefit retirement handbook I receive 5%ppi for mental injury from dr.Hill and 2% injury From Dr.Connelly during the injury in workmans comp case after my injury in 2014.

5.Dr.Connelly ,Dr.Hill and Dr Adams diagnose me with work related injury qualifying me For disability pension that pays much more monthly benefits than early retirement in Which they forced on me.

6.ON June 1 2016 I received a letter of seniority -termination from marta/atu732,et A decision to terminate me was made 8 months earlier on September 15-2015 the Accident was in Oct 12 2014 I was never contacted or informed my job was in jeopardy In no form or fashion letter,email.(telephone is not official according to the contract)this Is a violation of TAFT-HARVEY ACT I had no prior knowledge until may 26-2026.

7.According to DR.ADAMS I was to return to work February 15-2016.( I had know prior Knowledge until 1-15-2026.

8.*** marta and atu732 e.t are under a collective bargaining agreement ,however in that Agreement there a clause were adr mediation by law must be used in a labor dispute .

Below is a summary of each counts according to the facts list 1 thru 11

Furthermore Marta/atu732,et including zenith American refuse to have a Legal explanation or any explanation period of the fact or actions of marta Personell,atu732 union officials including pat giles as trustee,john costa as President of atu,curtis howard vp of atu international,dunnans as former atu 732 president,Tiwanna Finch as pension manager and stella jones as marta Workman comp case manager.

According to federal law 60b4 you can file a new case complaint.If there is a measure Of: 1.fraud 2.purjery 3. New evidence 3.jurisdiction issue 4.extra-ordinary case Here are counts 1 thru 11

1.fraud,new evidence the union bill of rights was not known to me or presented to me On my behalf by marta/atu732 et concerning grievance -arbitration procedures.this is A direct violation of statutory law governing unions(the union bill of rights) during the period Of 10-12-2014 until I discovered 5/1/2026.

2.Fraud ,new evidence zenith American solutions is a part of marta/atu732,entirely group. Tiwanna finch refuse to apply universal formulation in calculating my monthly pension other benefits.comapred to other participants who received 700 to 1000 a month in similar Situation.( I was suppose to receive disability retirement not early retirement I was injured On the job ( see documents fro physician

3.Fraud. Marta/atu732,et didn't provide me with information concerning my job being in Jeopardy such as union contract ,taft harvety laws ,union bill of rights and collective bargaining agreement.from 10-12-2014 until present pat giles as trustee,rufus silas as Shop stewart,harris as shop stewart ,dunans as former president.

Continue with counts

4.Fraud . the union bill of rights were not presented to me from 10-12-2014 by marta/ Atu732,et I didn't know of those such laws and rights which include protocol and Procedures concerning grievance-arbitration and money damages.

5.Fraud. concerning retirement handbook I was not properly informed about temporary Benefit after a on the job injury.I been diagnose by several physicians 5%ppi,2%ppi and Ptsd.

6.Fraud***on September 15 2015 my fate was decided against my knowledge(no union Official rufus silas,pat giles or dunans contact me about collective bargaing contract and Protocol and procedure when a member job is in jeopardy nither the union bill of rights Which is statutory law made possible by taft-harvey act.

7.hidden fraud.*** new evidence from 12-1-2014 I start see Dr.David Adams I was returned To work after he released me they never contacted me to come back to work then in June 1 2016 the mailed me the termination letter from sept -15-2015 befor a bus driver can return You must take a drug and alcohol test ,pass a physical according to dot.marta/atu732 et know this.( this is also wrongful termination).

8.Fraud.marta/atu732 and zenith American didn't apply the 5%ppi from dr.hill,2%ppi From Dr.connelly and ptsd diagnosis from Dr.Adams concerning my disability pension And temporary benefits after injury according to retirement summary handbook.etc

Continue counts

9.Fraud,violation of federal rule 11/12 JUDGE BULAH OR/AND JUDGE CHEESBRO didn't Grant me the opportunity to motion for jurisdiction in prior case 1:22CV-02770-JPB Judge cheesbro just handed it over and judge bulah rules fully on friviolous lawsuit and Lied about marta/atu732 contacting me in December of 2015 about greivence -arbitration To save my job.

10.Fraud.concerning my or this case extraordinary federal and constitution laws were Violated due process is one according to us constitutional laws and the fiduary act 1974 All these organization such as marta/atu732, the union officials ,marta personal,benefit Officials ,marta retirement official mention above the entirety or group as trustees to the Participant we depend on them with trust in this case was grossly violated in other words These are fiduary officials and organization ( you suppose by law to put he participants first).

11.Fraud ,fiduary violation fiduary act 1974,arbitration act us code title 9 from not assisting Myself in filling grievance-arbitration,not paying fair monthly bnefits for disable employee Union member,participant not paying tempory injury benefits,ppi injury benefits ,paid a disability pension and not even granting me medical insurance (state the facts am I retired Or fired.) I still have no knowledge of that.

Summary of conclusion and relief:

(CBA.s collective bargaining agreement have alternative dispute resolution clauses of the contract, I feel would outline exactly

What has happen to me since my accident working as a bus driver

With marta ,faithful dues paying union member,and a participant in

Zenith American retirement and benefits.I mostly seek along with

Disability monthly pension payments up to $3000.00 a month back

Pay with interest,temporary benefits back pay and interest,decent

Medical insurance ,workan compensation benefits for injury with

Interest and back pay.Most of all for such filthy lying fraud acts to myself misuse of public trust reparations,restitutions and punitive damages up to 1.3 million dallors.all this for a reason not sure I forgot to mention long short term disability ,not to mention mental

Pyscological and physical abuse stress this has caused my family

Malic.i prey for monetary relief and medical insurance from this

Court.

P.s I also would mention to the court to consider I will never get a

Fair trail in atlanta or and a trail at all in atlanta area.

Sincerely

Date 8-31-26

# Fw: Refunded filing fee

From: Gregory Davis (mddist30297@yahoo.com)

Cc: employmentfiling@adr.org

Date: Thursday, December 21, 2017 at 06:32 PM EST

Case no 01 17 0006 8436

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "Employment Filing Team" <EmploymentFiling@adr.org>
**To:** "mddist30297@yahoo.com" <mddist30297@yahoo.com>

**Sent:** Thu, Dec 21, 2017 at 4:30 PM
**Subject:** RE: Refunded filing fee

Good Afternoon,

Please provide your Case number.

Thank you

**From:** Gregory Davis [mailto:mddist30297@yahoo.com]
**Sent:** Thursday, December 21, 2017 4:24 PM
**To:** Employment Filing Team
**Subject:** Refunded filing fee

When would I get my 200 fee refunded I'm trying to seek a court order so as a can follow through

Sent from Yahoo Mail on Android

**Employment Filing Team**

American Arbitration Association

T: 856 679 4610 E: EmploymentFiling@adr.org
1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

RE: Arbitration

From: Gregory Davis (mddist30297@yahoo.com)

To: EmploymentFiling@adr.org

Date: Thursday, February 13, 2020 at 11:03 AM EST

Most pension plans have advocates you at aaa should have one too

Sent from Yahoo Mail on Android

On Thu, Feb 13, 2020 at 9:30 AM, Employment Filing Team
<EmploymentFiling@adr.org> wrote:

Good morning,

Please note that a case cannot move forward until all initial filing requirements are met. As the requirements were not met, the above referenced case was closed December 5, 2019 as the respondent in this matter did not agree to have the AAA administer this case.

Thank you.

**Employment Filing Team**

American Arbitration Association

T: 856 679 4610 E: EmploymentFiling@adr.org
1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043
adr.org | icdr.org | aaamediation.org

NPT's BEST NONPROFITS TO WORK FOR ★2019★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Gregory Davis <mddist30297@yahoo.com>
**Sent:** Tuesday, February 11, 2020 7:11 PM
**To:** Case Filing <CaseFiling@adr.org>
**Subject:** RE: Arbitration

*** External E-Mail – Use Caution ***

When your gonna respond

Sent from Yahoo Mail on Android

On Fri, Jan 31, 2020 at 9:17 AM, Case Filing
<CaseFiling@adr.org> wrote:

Hello. We have forwarded your inquiry to the Employment Filing team for a response.

Thank you.

**Case Filing**

American Arbitration Association

T: 877-495-4185
F: 877-304-8457
adr.org | icdr.org | aaamediation.org

NPT's BEST NONPROFITS TO WORK FOR ★2019★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** mddist30297@yahoo.com <mddist30297@yahoo.com>
**Sent:** Friday, January 31, 2020 8:16 AM
**To:** Case Filing <CaseFiling@adr.org>
**Subject:** Arbitration

*** External E-Mail – Use Caution ***

**Office of Labor-Management Standards**

# Labor-Management Reporting and Disclosure Act

The *Labor-Management Reporting and Disclosure Act* (LMRDA) grants certain rights to union members and protects their interests by promoting democratic procedures within labor organizations. The LMRDA establishes the following:

- Bill of Rights for union members
- Reporting requirements for labor organizations, union officers and employees, employers, labor-relations consultants, and surety companies
- Standards for the regular election of union officers
- Safeguards for protecting labor organization funds and assets

Unions representing federal employees are similarly covered by the implementing regulations of the standards of conduct provisions of the *Civil Service Reform Act*. Unions representing solely state, county, and municipal employees are not covered by either of these laws.

The Secretary of Labor enforces certain provisions of the LMRDA and has delegated that authority to the Office of Labor-Management Standards (OLMS). Other provisions may only be enforced by union members through a private suit in a federal district court. Major provisions of the LMRDA are outlined below.

**Title I - Bill of Rights of Union Members**

- Union members have equal rights to nominate candidates for union office, vote in union elections, and participate in union meetings. They may also meet with other members and express any opinions.
- Unions may impose assessments and raise dues only by democratic procedures.
- Unions must afford members a full and fair hearing of charges against them.
- Unions must inform their members about the provisions of the LMRDA.
- Members may enforce Title I rights through a private suit against the union, but may be required to exhaust internal union remedies for up to four months before filing suit.
- Union members and nonunion employees may receive and inspect collective bargaining agreements. This right may be enforced by the individual or by the Secretary of Labor.

**Title II - Reporting Requirements**

- Unions must file information reports, constitutions and bylaws, and annual financial reports with OLMS.
- Officers and employees of labor unions must report any loans and benefits received from, or certain financial interests in, employers whose employees their unions represent and businesses that deal with their unions.
- Employers and labor-relations consultants who engage in certain activities to persuade employees about their union activities or to supply information to the employer must file reports.
- Surety companies that issue bonds required by the LMRDA or the *Employee Retirement Income Security Act* must report data such as premiums received, total claims paid, and amounts recovered.
- The Secretary of Labor has authority to enforce the reporting requirements of the LMRDA.
- The reports and documents filed with OLMS are public information and any person may examine them or obtain copies at OLMS offices or via the OLMS Internet Public Disclosure Room at www.unionreports.gov.
- Filers must retain the records necessary to verify the reports for at least five years after the reports are filed.
- Unions must make reports available to members and permit members to examine records for just cause.

**Title III - Trusteeships**

- A parent union that places a subordinate body under trusteeship must file initial, semiannual, and terminal trusteeship reports.

This is familiar case law regarding grieviences and arbitration unfair union conduct

EXIBIT:

A. VACA vs. Snipes,386 U.S.171/1967

B. Textile workers of America vs.Lincoln Mill of Alabama

   353 45 448 (1957)

C. Federal jurisdiction () 301.federal Courts can enforce arbitration Clauses on collective bargaining agreements.

marta

2424 Piedmont Road, NE
Atlanta, GA 30324
404-848-5000

June 1, 2016

**VIA FIRST CLASS AND CERTIFIED MAIL**

Mr. Gregory M. Davis
4642 Ernest Drive
Forest Park, GA 30297

RE: ***Termination of Seniority***

Dear Mr. Davis:

This is to inform you that in a Labor-Management meeting on September 15, 2015, the parties agreed to an interpretation of Paragraph 34.C.(4) which impacts your employment status. Based upon this recent interpretation:

- Individuals absent due to inability to perform assigned job, whose last day worked was December 31, 2014 or earlier will be subject to the terms and conditions of the Labor Agreement between Metropolitan Atlanta Rapid Transit Authority and Amalgamated Transit Union Local 732, effective November 23, 2010- June 30, 2013.

Our records reflect you last October 17, 2014, and you have been unable to perform your assigned job for a time period which exceeds 18-months. Effective **April 17, 2016** your employment with MARTA was terminated.

All MARTA property in your possession should be returned to your General Superintendent or Manager immediately. The cost of any property that is not returned will be deducted from any funds due to you from MARTA. Please contact the Benefits Office at (404) 848-5236 for information concerning the continuation of benefits. Questions concerning pension benefits should be directed to Zenith American Solutions at 770-934-3953.

MARTA wishes you success in your future endeavors.

Sincerely,

Jim Robinson
Senior Director of Human Resourc

ACCIDENT COMMITTEE

## SECTION IV: GRIEVANCE PROCESS

8. MARTA agrees to meet with duly accredited officers and committees that are elected or selected by the Union to answer questions and resolve grievances that may arise between the parties during the life of the contract

A. A grievance is defined under this agreement as a dispute brought by the Union or an employee in the bargaining unit arising over the interpretation, application, and the terms of the agreement or work rules. The grievance shall specify the rule or policy violated and all the facts or the alleged facts relied upon to support the contention of the employee

B. All parties will cooperate with each other in the investigation of grievances to provide information to aid in the resolution of disputes. MARTA Labor Relations shall receive and coordinate the advancement of all grievances through the electronic grievance process. The original grievance and all appeals by the Union to the next step of the grievance process must be made by giving electronic notice through the electronic grievance process if it is functioning, if it is not functioning then notice shall be given by electronic mail if functioning and in instances of that system failure then fax transmittals may be used.

9. After a thorough investigation of the incident giving rise to the discipline, employees found to have been disciplined in error or not for just cause shall be reinstated to their former position and the remedy related to wrongful discipline shall be granted.

10. When MARTA is made aware of an event involving an employee that results in discipline, that employee shall be issued discipline within five (5) business days. At the

discipline meeting, the employee may, if he/she specifically requests it, have Union representation present. Violations other than a routine nature that may have to be investigated (such as accidents or safety issues, mishandling of fares, work place violence,) shall have the investigation concluded within two weeks. Any investigation with extenuating circumstances that require more than two weeks to complete should be discussed and explained to the Union steward handling the grievance and the appropriate full-time Union officers.

A. When employees are at work and subsequently suspended, the disciplinary action will not start until the next day. Nothing herein shall abridge the right of MARTA to lay off employees because of lack of work.

B. MARTA reserves the right to administer working suspensions at its discretion.

11. Employees shall first submit the grievance to their Union Official, within five (5) business days of the occurrence of the event giving rise to the grievance or upon being notified of the discipline by MARTA management. The Union must send the grievance via the electronic grievance process if it is functioning, if it is not functioning then the grievance must be transmitted by electronic mail if functioning and, in instances of that system failure then fax transmittals may be used, directly to MARTA Labor Relations within five (5) business days after receipt of the grievance above. If these timelines and grievance requirements are not met, the grievance shall be deemed abandoned and not entitled to consideration thereafter.

12. Upon receipt of the grievance, the parties at each step of the grievance process will have five (5) business days to arrange a meeting between the Union Officer(s) or their designee and Management. At each step of the grievance process,

discipline meeting, the employee may, if he/she specifically requests it, have Union representation present. Violations other than a routine nature that may have to be investigated (such as accidents or safety issues, mishandling of fares, work place violence,) shall have the investigation concluded within two weeks. Any investigation with extenuating circumstances that require more than two weeks to complete should be discussed and explained to the Union steward handling the grievance and the appropriate full-time Union officers.

A. When employees are at work and subsequently suspended, the disciplinary action will not start until the next day. Nothing herein shall abridge the right of MARTA to lay off employees because of lack of work.

B. MARTA reserves the right to administer working suspensions at its discretion.

11. Employees shall first submit the grievance to their Union Official, within five (5) business days of the occurrence of the event giving rise to the grievance or upon being notified of the discipline by MARTA management. The Union must send the grievance via the electronic grievance process if it is functioning, if it is not functioning then the grievance must be transmitted by electronic mail if functioning and, in instances of that system failure then fax transmittals may be used, directly to MARTA Labor Relations within five (5) business days after receipt of the grievance above. If these timelines and grievance requirements are not met, the grievance shall be deemed abandoned and not entitled to consideration thereafter.

12. Upon receipt of the grievance, the parties at each step of the grievance process will have five (5) business days to arrange a meeting between the Union Officer(s) or their designee and Management. At each step of the grievance process,

STATEMENT OF EARNINGS AND DEDUCTIONS
PLEASE RETAIN FOR YOUR RECORDS

QUESTIONS? MARTA/ATU LOC 732 EMPLYS RET P
1-800-765-6148 0041850930

| CURRENT---> GROSS | 290.74 | DEDUCTIONS | 4.00 | NET | 286.74 |
|---|---|---|---|---|---|
| BENEFIT FUNDS | AMOUNT | DEDUCTION | AMOUNT | YEAR TO DATE | |
| MONTHLY | 290.74 | FED TAX | | FED TAX | |
| | | ST TAX | | ST TAX | |
| | | UNION DUES | 4.00 | UNION DUES | 20.00 |
| | | | | GROSS | 1,453.70 |
| EMPLOYEE CONTR. | 0.00 | | | NON-TAX | |

GREGORY M DAVIS 583246958
05/29/26

TRMP07 10/14

PNC

MARTA/ATU LOC 732 EMPLYS RET P

PAYABLE DATE
05/29/26

# NOTIFICATION OF DEPOSIT

AMOUNT
$********286.74

GREGORY M DAVIS
4642 ERNEST DRIVE
FOREST PARK GA 30297

BANK ACCT NO. ********4645

NON NEGOTIABLE

PNC Bank, National Association
Pittsburgh, Pennsylvania

0002546

FOR CHANGE OF ADDRESS
NOTIFY US IN WRITING
WITH SIGNATURE TO:

PNC
P.O. BOX 606
PITTSBURGH, PA 15230-0606

IF PAYEE IS DECEASED PLEASE
CONTACT US AT THE TOLL FREE
NUMBER ABOVE.

GREGORY M DAVIS
4642 ERNEST DRIVE
FOREST PARK GA 30297

MARTA REPRESENTED PENSION PLAN
(BOARD OF TRUSTEES MEETING - FEBRUARY 21, 2020)
APPLICATIONS - APPROVALS
ALL NECESSARY INFORMATION AND SUPPORTING DOCUMENTS CONTAINED IN EACH FILE

Applications for Retirement

| NAME | Date of Birth | Years of Service | Points | Last Date Worked | Type of Pension | Form of Pension | Effective Date | Gross Monthly Amount | Lump Sum Withdrawal | Union Dues |
|---|---|---|---|---|---|---|---|---|---|---|
| Cox, Charlene H. | 1/1/1951 | 29.417 | 98.417 | 12/31/2019 | Normal | Life | 1/1/2020 | $2,431.46 | $70,256.05 | $4.00 |
| Gary, Willie F. | 1/28/1959 | 19.250 | 80.083 | 11/8/2019 | EUR | Life | 12/1/2019 | $1,433.39 | $43,306.09 | None |
| Hitchcock, Sandra D. | 10/8/1950 | 25.584 | 94.667 | 11/26/2019 | Normal | Life | 12/1/2019 | $2,174.64 | None | $4.00 |
| Kingsberry, David L. | 9/25/1949 | 16.500 | 86.667 | 11/20/2013 | Normal - DV* | Life | 12/1/2019 | $1,235.91 | None | None |
| Porter, Kevin P. | 11/22/1953 | 13.583 | 79.666 | 12/19/2019 | Normal | 100% J&S | 1/1/2020 | $1,079.50 | None | $4.00 |
| Richardson, Theresa B. | 7/23/1957 | 19.917 | 82.250 | 11/15/2019 | EUR | Life | 12/1/2019 | $1,317.21 | $35,036.29 | $4.00 |
| Riley, Harry J. | 10/7/1954 | 10.750 | 75.917 | 12/20/2019 | Normal | 50% J&S | 1/1/2020 | $817.49 | None | $4.00 |
| Rowe, Suderia H. | 10/25/1957 | 18.250 | 80.417 | 12/20/2019 | EUR | Life | 1/1/2020 | $1,239.72 | $38,506.29 | $4.00 |
| Smith, Pamela B. | 3/13/1954 | 13.083 | 78.833 | 12/27/2019 | Normal | Life | 1/1/2020 | $873.30 | $27,301.21 | None |
| Storey, Reginald | 2/7/1958 | 25.000 | 86.833 | 12/27/2019 | EUR | Life | 1/1/2020 | $2,087.07 | $57,679.68 | $4.00 |

Applications for Retirement (Monthly Benefit Less than $300.00)

| NAME | Date of Birth | Years of Service | Points | Last Date Worked | Type of Pension | Form of Pension | Effective Date | Gross Monthly Amount | Lump Sum Withdrawal | Union Dues |
|---|---|---|---|---|---|---|---|---|---|---|
| Wells, Randall R. | 10/12/1955 | 9.000 | 73.167 | 5/18/2014 | Early - DV* | N/A | 1/1/2020 | N/A | $44,873.81 | None |

Terminations

| NAME | Date of Birth | Date of Hire | Date of Term | Type of Payment | Form of Pension | Date of Processing | Lump Sum Amount |
|---|---|---|---|---|---|---|---|
| Novy, Christopher M. | 7/6/1989 | 5/31/2016 | 3/8/2019 | Lump Sum Under 59 1/2 | Check - RD* | 1/29/2020 | $6,246.79 |
| Ward, Walter E. | 12/21/1982 | 6/29/2015 | 11/12/2019 | Lump Sum Under 59 1/2 | Check - RD* | 1/21/2020 | $8,457.87 |

*Early - Early Retirement before age 65
*EUR - Early Unreduced Retirement (no penalty)
*NSR - Non Service Related Injury
*SR - Service Related Injury (Worker's Comp)
*J&S - Joint and Survivor Election
*ACH - Direct Deposit
*RD - Rollover Distribution - Member elected a Direct Rollover of funds to a qualified plan or an Individual Retirement Account (IRA).
*DV - Deferred Vested
*NR - Member transferred from Represented to a Non-Represented position
*RR- Member was previously retired, returned to ...
*TD - Member was on

Totals
$14,704.66 Terminations
$316,959.42 Lump Sums
Total Deaths 0

DISAbil COPY $120

years

- Exhibit II - Statement of Operations
  - Total Operating Income for the Current Month was $1,211,740
  - Current Year to Date January 1, 2019 – November 30, 2019 was $15,516,373
  - Total Operating Expenses Current Month for November 30, 2019 was $3,124,957
  - Current Year to Date $34,353,418 representing January 1, 2019 – November 30, 2019
  - Total Net Investment Gains/Losses was $12,092,619 for the Current Month
  - Total Net Investment Gain/Losses was $93,509,570 Current Year to Date

Mr. Haynsworth inquired in the increase in operating income which appeared to be more than 12%. Mr. Dawkins noted that 2019 was the Year of the Bus and there were a good deal of new hires which increased the employee contributions seen from the prior year. It was agreed that the employees needed more education on the benefits of participating in the Defined Benefit Plan. Ms. Dawkins noted that Human Resources were working on this message. Ms. Harris also advised the Committee that in the past Zenith had participated in Open Enrollment as a way of assisting with delivering this message. Mr. Haynsworth noted that retention was the key to the funding efforts of the plan. The Committee discussed the idea of having Annual Benefit Statements done again. To this, Ms. Dawkins requested Mr. Haynsworth provide the Committee with a proposal for this project since the statements are a good tool.

After a discussion and without further questions, the financial statement was accepted as informational.

## C. Pension Approvals

Ms. Harris reviewed with the Committee Members the ratified retirement applications for December 2019 and the January applications as provided in the table below. It was noted that there were lump sum payments made in the amount of $252,662.92.

| Name | Date of Birth | Years of Service | Points | Last Date Worked | Type of Pension | Form of Pension | Effective Date | Gross Monthly Amount | Lump Sum Withdrawal | Union Dues |
|---|---|---|---|---|---|---|---|---|---|---|
| Conrad, Danny R. | 8/21/1966 | 30.000 | 83.00 | 8/30/2019 | EUR - RR* | 50% J&S | 9/1/2019 | $2,838.76 | $32,343.85 | None |
| Gresham, Julius | 8/29/1950 | 19.000 | 88.08 | 9/23/2019 | Normal | 50% J&S | 10/1/2019 | $979.07 | $35,951.21 | $4.00 |
| Herrod, Lysander | 9/23/1955 | 15.083 | 79.16 | 10/31/2019 | Early | Life | 11/1/2019 | $779.29 | $33,286.71 | None |
| Sanders, Prince | 9/27/1952 | 13.667 | 80.75 | 1/28/2013 | Normal - DV* | Life | 11/1/2019 | $734.27 | $21,972.65 | None |
| Thomas, Isaiah | 3/12/1954 | 25.167 | 90.83 | 11/15/2019 | Normal | 50% J&S | 12/1/2019 | $1,903.61 | $56,860.77 | None |
| Weston, Gary W. | 1/5/1961 | 23.416 | 82.16 | 10/30/2019 | EUR | 50% J&S | 11/1/2019 | $1,115.05 | $39,321.14 | None |

Applications for Retirement (Monthly Benefit Less than $300.00)

| Name | Date of Birth | Years of Service | Points | Last Date Worked | Type of Pension | Form of Pension | Effective Date | Gross Monthly Amount | Lump Sum Withdrawal | Union Dues |
|---|---|---|---|---|---|---|---|---|---|---|
| Swafford, Evette R. | 9/30/1972 | 13.333 | 60.33 | 9/30/2019 | Early | N/A | 10/1/2019 | N/A | $32,926.59 | None |

Terminations

| Name | Date of Birth | Date of Hire | Date of Term | Type of Payment | Form of Pension | Date of Processing | Lump Sum Amount |
|---|---|---|---|---|---|---|---|
| Askew, Julius R. | 2/20/1984 | 8/20/2007 | 5/17/2019 | Lump Sum Under 59 1/2 | ACH* | 12/10/2019 | $22,546.74 |
| Betts, Elishia | 12/1/1963 | 8/4/2007 | 3/11/2015 | Lump Sum Under 59 1/2 | ACH* | 12/6/2019 | $7,302.51 |

# MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN

ORGANIZED SEPT. 15, 1892

RECEIVED FEB 27 2023

## AMALGAMATED TRANSIT UNION LOCAL 732

*"Freedom Through Organization"*

RECEIVED FEB 7 2023

marta®

## SUMMARY PLAN DESCRIPTION

Effective January 1, 2015

2 copies MARTA/ATU Summary Book

RECEIVED FEB 27 2023 STATE BOARD OF WORKERS' COMPENSATION ATLANTA

RETURN TO WORK AFTER BENEFITS BEGIN

If you return to work as a Full-Time Employee after your Retirement benefits have begun, your benefit payments will be suspended for as long as you remain a Full-Time Employee.

When you subsequently retire again, your benefits will be recalculated as though there was no interruption in your employment, and the years of Credited Service before and after your initial Retirement will be counted in determining your benefit. However, in the event that changes in the benefit structure occur after your initial retirement, you must complete at least five (5) additional years of Credited Service to have all prior Credited Service recalculated at the higher benefit level.

RECEIVED FEB 7 2023 STATE BOARD OF WORKERS' COMPENSATION ATLANTA

## DISABILITY BENEFITS

ELIGIBILITY

If you become disabled while you are an active Participant, you will be eligible to receive a Disability Benefit if your disability meets the criteria established by the Committee.

For Disability Benefit applications made on or after January 1, 2015, you must have earned at least ten (10) years of Credited Service to receive a Service Related Disability Benefit or a Non-Service Related Disability Benefit.

You will be required to submit to physical examination by one or more independent physicians chosen by the Committee to qualify for a Disability Benefit.

TOTAL AND PERMANENT DISABILITY

You will be considered Totally and Permanently Disabled if the Committee determines that you are totally and permanently unable, as a result of injury or illness, to engage in any further employment. Such Disability must be permanent and continuous during the remainder of your life.

Proof of Total and Permanent Disability shall be either a determination of Total and Permanent Disability from the Social Security Administration or the concurring opinion of two Committee appointed physicians certifying Total and Permanent Disability.

TEMPORARY DISABILITY

If you incur a Disability which prevents you from performing the duties of your job with MARTA, you may be eligible for Temporary Disability Benefits which are payable for up to eighteen (18) months for all Disability applications made on or after January 1, 2015 (36 months for Disability applications made prior to 2015). Payments will

commence six (6) months after the Date of Disability as determined by the Committee.

A second Temporary Disability for a separate incident must be separated by at least six (6) months of Credited Service from the end of the initial Temporary Disability.

Under no circumstances will the Plan pay more than seventy-two (72) months of Temporary Disability Benefits to a Participant during their lifetime.

SERVICE RELATED AND NON-SERVICE RELATED DISABILITY

A disability that is the result of injury or illness which occurs in the course of the Participant's Employment with the Employer that results in Workers Compensation Benefits from the Employer shall be considered a Service Related Disability. Any other disability shall be considered a Non-Service Related Disability.

AMOUNT OF DISABILITY BENEFIT

A. TOTAL AND PERMANENT DISABILITY – The Service Related Disability Benefit is the greater of (1) Normal Retirement Benefit with no reduction for fewer than 85 points or (2) $1,000 per month. The Non-Service Related Disability Benefit is the greater of (1) Normal Retirement Benefit with no reduction for fewer than 85 points or (2) $650 per month.

B. TEMPORARY DISABILITY – The Service Related Disability Benefit is $1,000 per month. The Non-Service Related Disability Benefit is $650 per month.

EXAMPLES OF DISABILTY BENEFITS

EXAMPLE 8 – TEMPORARY DISABILITY - SERVICE RELATED

Suppose you apply for temporary disability on or after January 1, 2015, at age 48 due to a job related injury with a total of 12 years of Credited Service. Your Disability Benefit would be equal to the monthly Temporary Service Related Disability Benefit of $1,000 payable for up to 18 months.

EXAMPLE 9 –TEMPORARY DISABILITY - NON-SERVICE RELATED

Suppose you apply for temporary disability on or after January 1, 2015, at age 48 due to an injury not related to your employment with MARTA with a total of 12 years of Credited Service. Your Disability Benefit would be equal to the monthly Temporary Non-Service Related Disability Benefit of $650 payable for up to 18 months.

RECEIVED FEB 7 2023

Service Related Disability Benefit pending resolution of the matter. If you are later approved for a Service Related Disability Benefit, the difference between the two benefit amounts will be paid retroactively, provided you submit such evidence within one hundred eighty (180) days after it becomes available to you. Otherwise the difference in benefits will be paid starting the first of the month following the month the evidence is submitted.

RECEIVED FEB 27 2023

SUSPENSION OF DISABILITY BENEFITS

Disability Benefits will stop under any of the following circumstances:

(A) If you are no longer Disabled.

(B) If your total income in any one year, excluding Workers Compensation payments, exceeds the annual rate of pay for the position you held when you became Disabled.

(C) If you refuse to submit to a physical examination by a physician selected by the Committee or fail to cooperate with the Committee in determining your income or the continued status of your disability.

DISABILITY OFFSET

Disability Benefits will be reduced dollar for dollar by the amount by which your total earnings including Disability Benefits exceeds the annual rate of pay for the position you held when you became Disabled.

EXAMPLE 12 – DISABILITY OFFSET

Assume you become Totally and Permanently Disabled and are eligible for Disability Benefits of $1,200 per month. Also assume the annual rate of pay for the position you held when you became Disabled is currently $45,600 or $3,800 monthly. Your Disability Benefits will be suspended if you work and your total income exceeds $3,800 monthly. Your Disability Benefits will be reduced if you work and earn more than $2,600 per month.

Suppose you earn $3,000 per month. Then your Disability Benefits will be offset by the amount by which your total earnings exceed the current annual rate of pay for your position, $3,800.

The offset is calculated as follows:

| | | |
|---|---|---|
| (A) | $ 3,000 | Your Earnings |
| | + 1,200 | Disability Benefit |
| | $ 4,200 | Total Current Earned Income |

Michael C. Hilton, M.D.
Distinguished Fellow of the American Psychiatric Association
3565 Piedmont Road NE, Four Piedmont Center - Suite 380, Atlanta, Georgia 30305-8202

# INDEPENDENT MEDICAL EXAMINATION

## NAME: GREGORY DAVIS
## DATE OF EXAMINATION: OCTOBER 3, 2022

**IDENTIFYING INFORMATION:**
Mr. Davis is a 54-year-old male who has filed a Georgia worker's compensation claim for injuries suffered on October 12, 2014, while employed as a Bus Driver for MARTA. He was involved in a head-on crash with a car in which the other driver was killed. Mr. Davis suffered injuries to his lower back and left shoulder. He does not have legal representation. He said his lawyers "quit on me."

**CONFIDENTIALITY WARNING:**
Prior to this psychiatric examination Mr. Davis was informed that the interview was not private or confidential and that a report would be sent to his insurance company and/or its representatives.

**RELEASE OF INFORMATION WARNING:**
This psychiatric examination report should not be released to the individual who has been examined other than under the supervision of a psychiatrist or a psychologist as the information in this report may be detrimental to his or her emotional health.

**SOURCES OF INFORMATION:**
1. On October 3, 2022, Mr. Davis was interviewed in person for 1.8 hours.
2. On October 3, 2022, Mr. Davis was given psychological testing (MMPI-2).
3. Psychology records from David V. Adams, PhD, dated December 30, 2014, and February 10, 2016.
4. Psychiatry records from Dean Chandora, M.D., dated August 7, 2019, February 6, 2020, March 19, 2020, June 16 and 29, 2020.
5. Psychiatry records from Bryon Evans, M.D., dated May 5, 2021, June 2 and 18, 2021.
6. Psychiatry Independent Medical Examination report from Todd Antin, M.D., dated July 2, 2021.
7. Unidentified handwritten treatment notes dated September 15, 2021, and October 6, 2021.

**FAMILY HISTORY AS REPORTED BY MR. DAVIS:**
Mr. Davis reported no family history of psychiatric problems or drug problems. He has great uncles who have had alcohol problems. Hypertension and diabetes are present in the family. Mr. Davis' father became disabled in his 60s from a heart attack and cancer. No one in the family has attempted suicide, been incarcerated, or been a party to a lawsuit, and no one has had a worker's compensation claim.

Telephone 404-352-4001 Facsimile 404-352-4009 Website: www.michaelhiltonmd.com Email: admin@michaelhiltonmd.com

There had been prolonged periods of depression that could last for up to a week. He denied depression currently. He denied anhedonia. Appetite was average. Energy varied. There was fatigue at times. He denied feeling like life was not worth living. He was sleeping well with C-PAP. Nightmares were occurring about twice a week and had decreased. He was taking sertraline 50 mg, but had been off of it for a month. He meet criteria for Major Depressive Disorder and Generalized Anxiety Disorder. He was to restart the sertraline.

On June 2, 2021, Mr. Davis was seen again. He complained that "they canceled my workman's comp." He was trying to get certified as a dislocated worker since he could not do his previous job. He had been out of work for the last seven years and had been getting worker's compensation. Zoloft was working for him, but he started getting short and angry in the afternoons. He had not seen a therapist recently. He denied many depressive symptoms. Nightmares were present about twice a week. He was taking sertraline and bupropion. The plan was to increase the sertraline to 75 mg, and he was to start hydroxyzine.

On June 18, 2021, he complained he was having certain trigger points in things that bothered him. He complained about standing in long lines, being in traffic, and lack of trust for the company for which he currently works. He discussed how his time incarcerated had impacted him mentally and emotionally over the past year.

**4. Psychiatry Independent Medical Examination report from Todd Antin, M.D., dated July 2, 2021.**

Dr. Antin was hired to examine Mr. Davis at the request of his nurse case manager for DOAS. There had been an accident, the other driver had died. History was obtained. There had been a diagnosis of PTSD, as well as somatic concerns. Dr. Antin's opinion was that he met criteria for PTSD, according to the DSM-5. He was still struggling with somatic and psychiatric symptoms. He said things got really bad when he was terminated from his position by MARTA, which destroyed his pension. Dr. Antin recommended weekly trauma-based psychotherapy for 12 to 18 months and that he start EMDR or DBT therapy. His current therapy had not been effective for the past four to five years. It was recommended that he not return to a career associated with driving or operating a commercial bus, or vehicles of any kind. A number of his current medicines were associated with drowsiness. It was noted that records had been reviewed. He reported waiting a long time for things, people irritating him, and traffic was a problem. He was given screening questionnaires and scored high on the Beck Depression and moderately high on the Obsessive-Compulsive Screener. He scored high on the Anxiety Screener. He scored high on the ADHD Screener, and he scored high to severe high on the PCL-5 for trauma. In conclusion, Dr. Antin was felt to suffer from chronic PTSD. He was felt to meet PTSD criteria. Treatment was recommended.

**5. Unsigned, unidentified, handwritten treatment notes dated September 15, 2021, and October 6, 2021.**

On September 15, 2021, Mr. Davis presented with a report that he was retired. He had had an MRI which showed a herniation at L4-5 and a need for surgery. There was a hearing scheduled for October 21st. He had applied for disability. He complained of mood swings. He felt that the union for MARTA had not helped represent him. He was given Benadryl and there was mention of Seroquel for some paranoia.

On October 6, 2021, he needed MMI done again. Benadryl was helping with sleep. There was mention of going to court and poor sleep. He was resentful of his wife from the past.

**DSM-5 DIAGNOSIS:**

1. History of Posttraumatic Stress Disorder, now with some residual symptoms.

**DISCUSSION AND OPINIONS:**

Mr. Davis comes from a family background notable for alcohol problems in several great uncles. Family history is otherwise unremarkable for psychiatric problems, alcohol problems, or drug problems. Mr. Davis' parents are alive and still married to one another and living in Decatur. Mr. Davis described having had a good relationship with his parents, but added that when he was a teenager, he and his father had two physical fights. Mr. Davis is educated through a year of college credits, but has no certificates. He is heterosexual and is in his first and only marriage to his wife Joyce. They have been together 32 years and things are going fairly well. They have no children. Mr. Davis has worked as a truck driver most of his adult life. He has not, however, worked since 2014. He was 46 years old when he was driving a MARTA bus that was hit head on by another vehicle that went underneath Mr. Davis' bus. The driver of the other vehicle was killed. Mr. Davis has hypertension, diabetes, and sleep apnea. He apparently had some soft tissue injuries in his accident and had a piece of metal go into his right lower leg from the gas pedal that was removed at the hospital after his accident. He reported no prior history of mental health treatment.

After the accident, he was involved in counseling with Dr. David Adams for a year and a half and in 2016 Dr. Adams indicated that Mr. Davis was at maximum medical improvement and had residual PTSD symptoms, but that he could be released to work that did not involve driving. Mr. Davis did not return to work of any type and ultimately his $400 a week cap on indemnity and medical benefits passed and he is now receiving no weekly income from worker's compensation. He has continued in mental health treatment through health insurance with a few health care providers. His compliance with treatment has been marginal and he has complained more about depression than he has PTSD.

In my interview he indicated that he has three nightmares per week. This is more than he was having a few years ago. He still reports his sleep is "not too good." Psychological testing came back invalid from gross exaggeration.

In reviewing Dr. Antin's report, I note that Mr. Davis was not given any assessments to measure validity. He was given a number of screening examinations and scored extremely high on almost all of them, indicating substantial symptoms in the PTSD realm, as well as depression, anxiety, and even ADHD. It is my opinion that his presentation at that time was likely also consistent with exaggeration.

Mr. Davis is angry and resentful towards MARTA. He does not see them as having treated him fairly. He apparently has a lawsuit against his union for not supporting him adequately in his claim with MARTA. He has indicated that if he gets proper restitution through MARTA, that he might be able to go back to some type of work there, but he does not see himself driving.

It is my opinion that Mr. Davis' PTSD symptoms, while not having completely resolved, has improved. He is no longer psychiatrically disabled. It is my opinion that he could go back to driving if he so chose. His decision not to return to employment as a driver is a personal decision and not a disability issue. Mr. Davis is not in need of any additional mental health treatment at this time from a work injury standpoint. I would give him a 5% Psychiatric Impairment Rating as a result of residual symptoms of his Trauma Disorder. *

Michael C. Hilton MD

Michael C. Hilton, M.D.
Psychiatrist

# Permanent Impairment Rating Using the 6th Edition

**Patient Name: Greg Davis** **Sex:** M

**ID Number:DAV000** **Exam Date: 8-22-22** **Injury Date:** 2014

**Diagnosis / Impairment:** Lumbar facet & disc pain (L5 - S1) see records attached

**Introduction:** This is an impairment rating for a 54-year-old male who had an injury when he was 46 years old. He has reported continued lumbar pain since. He comes today with records & MRIs showing severe disc narrowing, retrolisthesis and disc protrusion. He has not tried injections or had a surgical consult, which is recommended. He also has anxiety and shoulder pain. These conditions need a further work up.

Please see the attached records to support the rating:

Below is a summary of the impairment rating with table and page numbers provided.

**Impairment Rating and Rationale:** Organ System and Whole Person Impairment (WPI) based on the **American Medical Association: Guides to the Evaluation of Permanent Impairment, sixth edition.**

| Body Part or System | Chapter Number, Page Number, Table Number | Key Factor & Class | Grade Modifiers for: Functional History, Physical Exam, Clinical Studies & BOTC | Final Class and Grade Used in Rating | Whole Person Impairment (%) (Combine values table used) |
|---|---|---|---|---|---|
| Lumbar – facet & disc pain | Page 570 table 17-4 | Class 1 | C | 2% | 2% |

*6th edition of the American Medical Association: Guides to the Evaluation of Permanent Impairment, sixth edition*

Lumbar Spine Regional Grid

| CLASS | CLASS 0 | CLASS 1 | CLASS 2 | CLASS 3 | CLASS 4 |
|---|---|---|---|---|---|
| IMPAIRMENT RATING (WPI %) | 0 | 1%–9% | 10%–14% | 15%–24% | 25%–33% |
| SOFT TISSUE AND NON-SPECIFIC CONDITIONS | | | | | |
| Non-specific chronic, or chronic recurrent low back pain (also [illegible] chronic sprain/strain, symptomatic degenerative disc disease, facet joint pain, SI joint dysfunction, etc) | 0<br>Documented history of sprain/strain-type injury, now resolved, or occasional complaints of back pain with no objective findings on examination | 1 2 3<br>Documented history of sprain/strain type injury with continued complaints of axial and/or non-verifiable radicular complaints and similar findings on multiple occasions (see Sec. 17.2 General Considerations) | | | |
| MOTION SEGMENT LESIONS | | | | | |

(7)
469
7336

AMA Guides
ama-assn.org

| Functional History Factor | Grade Modifier 0 | Grade Modifier 1 | Grade Modifier 2 | Grade Modifier 3 | Grade Modifier 4 |
|---|---|---|---|---|---|
| Activity | Asymptomatic; problem resolved; inconsistent symptoms | Pain; symptoms with strenuous/ vigorous activity | Pain; symptoms with normal activity | Pain; symptoms with less than normal activity (minimal activity) | Pain; symptoms at rest, limited to sedentary activity |
| PDQ or alternative validated functional assessment, scaled appropriately | No Disability PDQ 0 MTAP : 200-181 | Mild disability PDQ 0-70 MTAP : 180-141 | Moderate disability PDQ 71-100 MTAP :140-91 | Severe disability PDQ 101-130 MTAP : 90-41 | Extreme disability PDQ 131-150 MTAP :40-5 |

AMERICAN MEDICAL ASSOCIATION: GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT, SIXTH EDITION.

**Total Whole Person Permanent Impairment: 2% based on the 6th edition.**

American Medical Association: Guides to the Evaluation of Permanent Impairment, sixth edition. Which states that, "an impairment is a significant deviation, loss or loss of use of any body structure or function in an individual with a health condition, disorder or disease."

Long term care:

By definition a permanent impairment is expected to last for a continuous period of time and is expected to remain until death. (Permanent means permanent) He definitely has documented loss but it is also important that these types of injuries will cause worsening degeneration and arthritis. Each trauma / tissue damage increases the risk of future injury and degeneration.

He also needs to follow up with a provider about PTSD & Anxiety.

Examining Physician: Printed Name: Dr. Chris Connelly, DC (certified in the 5th and 6th edition of the American Medical Association: Guides to the Evaluation of Permanent Impairment, sixth edition.)

Chris Connelly DC

Date of exam: 8/22/22

Connelly963@yahoo.com

Connelly963@y

PainAttorney.com

# RE: Gregory Davis IMP 2022 DOL 2014

From mddist30297 (mddist30297@yahoo.com)

To records@painatlanta.com

Date Tuesday, August 30, 2022, 01:56 PM EDT

Ok I got it

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: "Painatlanta.com" <records@painatlanta.com>
Date: 8/30/22 1:49 PM (GMT-05:00)
To: mddist30297@yahoo.com, CJC <connelly963@yahoo.com>, Zach <painatlantacases@gmail.com>
Subject: Gregory Davis IMP 2022 DOL 2014

Please see attachment below for ***Gregory Davis*** .Feel free to email us if you have any questions. Please respond back so that we know that you have received the attachment .

**Thank you,**

**Dr. Shaunna Morrow, D.C.**
**Amanda Lee, C.A.**
**Mar Villanueva Custodian of Records**
**Village Chiropractic**
**PainAtlanta.com**
2045 Rockbridge Road Sw
Stone Mountain, GA 30087
**770-469-7330**
**Fax 770-469-9588**

*This message is confidential and contains confidential health information. This information is protected under HIPAA. The information contained in this transmission may contain privileged and confidential information, including patient information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are not the intended recipient of this information please contact us immediately at 770-469-7330 and destroy this email.*

Secured by Paubox - HITRUST CSF certified

Copy AMA 6th Edition

David B. Adams, Ph.D., FAACP, FAPM
Board Certified in Clinical Psychology (ABPP)
Fellow, Academy of Psychosomatic Medicine
Diplomate, American Academy of Pain Management
Atlanta Medical Psychology
The Medical Quarters - Suite 251
5555 Peachtree Dunwoody Road, N.E.
Atlanta, GA 30342-1719
404.252.6454 Fax: 404.851.9286
psychological.com AtlantaMedicalPsychology@gmail.com

Office Visit or Addendum Note (draft copy)

Chart: 5909 Last Name: Davis First Name: Gregory MI: --- Title: Mr. 02/10/201
S.S.N.: 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 Date of Birth: 02/21/1968 Age: 48 Referred By: Ms. Lindy Mann

---------------------------------------------DEMOGRAPHICS---------------------------------------------

City: Forrest Park State: GA Marital Status: M Sons: 0 Daughters: 0

---------------------------------------------REFERRAL---------------------------------------------

Date of Initial Exam: 12/16/14 Injury: Rt. Leg, shoulder, cervical and lumbar in MVA. Other driver killed Date of Injury:
2014/10/12 Treating MDs: Dr. Vincent Smith
Education: 12+ Occupation: Driver Employer: MARTA
Surgeries: None specified Rx: Nsaids
Reason for Psych. Referral: PTSD First Return Visit: 12/30/14 Authorized Visits: ˜
Case Manager: Ms. Mann Insurer: Marta Attorney: N/S

---------------------------------------------

Case Overview from Initial Exam: 12/16/14 - 48 yo married male, no children, paralegal trained, 16 years bus driver for MARTA. Man drove head-on into patient's bus and was killed. Four passengers aboard, several injured. Patient has spinal and right side orthopedic complaints, see by Dr. Vincent Smith was seen by EAP and been in PT. Has difficulty when other vehicles approach his.

---------------------------------------------

PROGRESS NOTE

---------------------------------------------

SUBJECTIVE (complaints): Mr. Davis states that he is looking for grant and aid to return to school, that he does not feel others are safe riding with him in a vehicle, that he must take remedial courses.

OBJECTIVE:

1. Biobehavioral: N/A

2. Psychotherapy: Mr. Davis (45 min) presents with mild pain complaints, minimal PTSD complaints except when in traffic in which others are driving unsafely.

3. (02/10/2016) Formal Dx Testing of Psych. Status: Formal Treatment Progress Assessment - Depressive Symptoms: No Anxiety Symptoms: Yes Sleep Disorder: No Eating Disorder: No Sexual Problems: No Irritability and/or impatience: No Problems with Attention: No Problems with Concentration: No Intrusive Thoughts: Occasional Problems with Recent Memory: No Problems with Distant Memory: No Obsessive Thought: Yes Phobic Avoidance: No Sensory Changes: No Thoughts of Harm to Others: No Thoughts of Self Harm: No Compulsive Behaviors: No Ethanol Abuse or Dependence: No Narcotic Abuse or Dependence: No Symptoms Unrelated to Injury: Yes Date of Career/Vocational Evaluation: N/A

ASSESSMENT: Mr. Davis is capable of functioning without psychological care, and he accepts that assessment.

Diagnosis: (mild residual pain) 300.82 Somatic Symptom Disorder with predominate pain, persistent, now mild;
Diagnosis: --
Diagnosis: 309.81 (F43.1) Posttraumatic Stress Disorder (without dissociative symptoms) - residual limitations exist
Personality Diagnosis: V71.09 No Dx (compulsive features noted) WHODAS: ˜2.0 Mild

PLAN: Mr. Davis has been released and will call this office prn if difficulties arise. MMI Release: 2/10/2016

EXHIBIT # D-4
PAGE # 1 OF 3

David B. Adams, Ph.D., FAACP
*(dictated but not read)*

Metropolitan Atlanta Rapid Transit Authority

marta.

February 2, 2016

Dr. David Adams
Atlanta Medical Psychology
The Medical Quarters
5555 Peachtree Dunwoody Road
Suite 251
Atlanta, GA 30342-1719

Fax: 404/851-9286
E-Mail: AtlantaMedicalPsychology@gmail.com

Re: Gregory Davis

C# 5-5565A01

D/A: 10/14/2014

DOB: 2/21/1968

The injured worker noted above, is receiving treatment from you for a workers compensation injury that occurred on 10/14/2014.

Mr. Davis has received a full duty release from

Please provide the following information:

**Date of Last Office Visit** 2/10/16 **Next Office Visit** Ø

**Diagnosis** 300.82 Somatic Symptom Disorder (pain) **Prognosis** Excellent

***WORK STATUS:* (please check)**

**Full Duty** ✓ **No Work** ____ **Discharged from Care** X **Date** 2/10/16

If NOT at Full Duty, can injured work return to Modified/Transitional Work at this time? (YES) NO

not driving

| Restriction | 1-33% OF TIME | 33-66% OF TIME | MORE THAN 66% |
|---|---|---|---|
| Lifting or Carrying Up to 10 lbs | | | |
| Lifting or Carrying Up to 20 lbs | | | |
| Lifting or Carrying 20 - 50 lbs | | | |
| Lifting or Carrying 50 - 100 lbs | Ortho determination | | |
| Lifting or Carrying Over 100 lbs | | | |
| Sitting | | | |
| Standing | | | |
| Walking | | | |
| Bending Over | | | |
| Twisting | | | |
| Climbing | | | |
| Reaching Above Shoulder Level | | | |
| Crouching/Stooping | | | |
| Kneeling | | | |
| Balancing | | | |

EXHIBIT # D-4
PAGE # 2 OF 3

| | | | |
|---|---|---|---|
| Pushing or Pulling | | | |

Is Injured Worker at **Maximum Medical Improvement?** (YES circled) NO
Treatment Plan / Recommendation

**Physician's Signature:** [signature] **Date:** 2/10/16

Thank you for your time and assistance in this case.
Please contact me should you have any questions or concerns. I can be reach at the number listed below

Jeannie Hodges RN BS CCM
Medical Nurse Case Manager
Amerisys- Marta
Phone: 404/554-8394
Fax: 404/554-8395
E-mail: Jeannie.hodges@amerisys-info.com

EXHIBIT # D-4
PAGE # 3 OF 3

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO



## Subpart A—Substantive Requirements Concerning Standards of Conduct

### § 458.1 General.

The term *LMRDA* means the Labor-Management Reporting and Disclosure Act of 1959, as amended (29 U.S.C. 401 *et seq.*). Unless otherwise provided in this part or in the CSRA or FSA, any term in any section of the LMRDA which is incorporated into this part by reference, and any term in this part which is also used in the LMRDA, shall have the meaning which that term has under the LMRDA, unless the context in which it is used indicates that such meaning is not applicable. In applying the standards contained in this subpart the Director will be guided by the interpretations and policies followed by the Department of Labor in applying the provisions of the LMRDA and by applicable court decisions.

[45 FR 15158, Mar. 7, 1980. Redesignated at 50 FR 31311, Aug. 1, 1985, as amended at 78 FR 8026, Feb. 5, 2013]

### § 458.2 Bill of rights of members of labor organizations.

(a)(1) *Equal rights.* Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) *Freedom of speech and assembly.* Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments or opinions; and to express at meetings of the labor organization his views upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(3) *Dues, initiation fees, and assessments.* Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date this section is published shall not be increased, and no general or special assessment shall be levied upon such members, except:

(i) In the case of a local organization, (A) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (B) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or

(ii) In the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (A) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than 30 days written notice to the principal office of each local or constituent labor organization entitled to such notice, or (B) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (C) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.

(4) *Protection of the right to sue.* No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceedings, or the right of any